REBECCA N. BRAGG *vs.* WILLIAM B. DOLE and another.

Penobscot.    Opinion February 20, 1882.

*Lease.    Covenant.*

The plaintiff, mortgagee in possession of certain premises, having recovered a conditional judgment therefor, March 5, 1877, but not taken out her writ of possession, leased the premises to the defendants "for the term of three years from May 9, 1877, subject only to the legal right of redemption from said mortgage by any one having the right of redemption," the lessees to pay therefor $400 per annum, "so long as said term shall last, or until the premises shall be so redeemed;" and the lessees covenanted to pay the rent monthly in advance, "and at the expiration of said term or so soon as the said lessor shall acquire an absolute title to said premises and be able to convey the same, to buy the same and to pay therefor the sum of $5000, in cash, in which case the rent above stated shall cease at the time of the purchase, and to quit and deliver up the premises . . at the end of the term aforesaid." The possession of the premises was delivered to plaintiff on the writ of possession, June 7, 1877. On June 4, 1880, the plaintiff tendered a deed and demanded performance on the part of the defendants who refused.

*Held,* plaintiff's tender was not seasonable, that the time stipulated in the lease was at or before the expiration of three years from May 9, 1877.

ON REPORT.

Action for breach of covenant contained in a lease whereby the lessees agreed to purchase.

(Lease.)

"This indenture, made the ninth day of May, in the year of our Lord one thousand eight hundred and seventy-seven.

"Witnesseth, that I, Rebecca N. Bragg, of Boston, in the county of Suffolk, and Commonwealth of Massachusetts, widow, and mortgagee under a mortgage of the premises hereafter described, given by Joseph C. White of Bangor, Maine, do hereby lease, demise and let unto William B. Dole, and James Albert Dole, both of Bangor, Penobscot county, Maine, the premises on the easterly side of Ohio street, in said Bangor, which were formerly occupied by the late Carlton S. Bragg, as a homestead, and more recently by Joseph C. White, as a homestead.

"To hold for the term of three years from said May 9, A. D. 1877, subject only to the legal right of redemption from said mortgage by any one having the right to redeem, the said Doles yielding and paying therefor the rent of four hundred dollars per annum so long as said term shall last, or until the premises shall be so redeemed, and the said lessees do covenant to pay the said rent in monthly payments, in advance, and at the expiration of said term or so soon as the said lessor shall acquire an absolute title to said premises and be able to convey the same, to buy the same and to pay therefor the sum of five thousand dollars, in cash, in which case the rent above stated shall cease at time of purchase, and to quit and deliver up the premises to the lessor or her attorney, peaceably and quietly at the end of the term aforesaid, except in case of purchase as aforesaid, in as good order and condition (reasonable use and wearing thereof, inevitable accident excepted,) as the same are or may be put into, by the lessor and to make all repairs upon the premises which may be necessary to keep them in a good, tenantable condition, and to protect them from decay, and not to make or suffer any waste thereof, and that they will not assign or underlet the premises or any part thereof, without the consent of the lessor in writing, upon the back of this lease. And the lessor may enter at any and all times to view, and make improvements, and suitable repairs. And if the said monthly payments herein named, or either of them, whether the same be demanded or not, are not paid when they become due, or if said leased premises shall be appropriated to any other purpose or use than as a

dwelling house, or if any waste or strip shall be made therein, or if any part of said demised premises are underlet without the consent of the lessor as above named, or if any condition or covenant of this lease to be by said lessees performed, shall be violated or neglected, then and in either of said cases the said lessor, her agent, attorney, heirs or assigns, may in any manner she or they may see fit, re-enter into the leased premises, and if he please terminate and annul this lease, so far as regards all future rights of said lessees, and the same to have again, retain, repossess and enjoy, as in his or their first estate, anything herein to the contrary notwithstanding.

"All glass broken in said premises during this lease, to be replaced by said lessees, said glass now being whole. All taxes upon the premises to be paid by lessor until lessees shall purchase as they above agree, and lessor agrees that so soon as she shall acquire absolute title to the premises and be able to convey them, she will sell and convey the same by a good and sufficient warranty deed to lessees for the sum of five thousand dollars, cash, to keep the premises insured against fire, and in case of loss and subsequent purchase by lessees to account to them for proceeds of insurance received by her.

"And the premises shall not be occupied, during said term, for any purpose usually denominated extra hazardous, as to fire, by insurance companies. In case of the refusal of either party to carry out the agreement to buy and sell the premises, the party so refusing shall pay the other one thousand dollars, which is hereby agreed upon as liquidated damages. In witness whereof, the parties have hereunto interchangeably set their hands and seals, the day and year first above written."

Rebecca N. Bragg,
William B. Dole,
James Albert Dole."

"Signed, sealed and delivered in presence of F. A. Wilson."

At the time of the execution of the lease, plaintiff's mortgagor was in bankruptcy.

Plaintiff had brought a suit to foreclose her mortgage, in which a conditional judgment had been rendered March 5, 1877.

The amount then ascertained as due or to become due under her mortgage being upwards of six thousand dollars. The writ of possession based upon said judgment, did not issue until May 22, 1877, and possession of the premises was delivered to plaintiff on the fourth day of June, 1877, plaintiff's title thus becoming absolute June 4, 1880. No payment had been made to plaintiff on her mortgage debt between the date of the judgment and said June 4, 1880.

On the fourth day of June, 1880, the plaintiff made, executed, and tendered, to the defendant a warranty deed, as an offer of performance on her part of their agreement to sell contained in the lease, and demanded of defendants a performance of their agreement to purchase contained in the lease. Defendants refused to accept the deed, claiming that they were not then bound to do so, the term of three years from the date of the lease having expired.

By the terms of the report, if the defendants were liable in this action for a breach of their covenant and agreement to purchase, a default was to be entered for one thousand dollars and interest from the date of the writ, otherwise a nonsuit was to be entered.

*Wilson and Woodward*, for the plaintiff.

The plaintiff claims that the defendants were bound to purchase the premises leased as soon as the plaintiff acquired an absolute title thereto, and was able to convey, whether that was before, at, or subsequent to the expiration of the term of the lease.

The agreement so to do was unambiguous, reasonable and complete, and "there can be no reason for refusing to admit the meaning which the words naturally import." *Millett* v. *Marston*, 62 Maine, 477.

Nothing appears in the instrument to show how plaintiff was to acquire absolute title. She was not restricted in this. She could acquire it in any way, and when she acquired it, then was the time when she was bound to sell and the defendants to buy. That was evidently the intent of the parties as indicated by examination of the whole context. 1 Chit. Contr. (11 Am.

ed.) 117; *Chase* v. *Bradley*, 26 Maine, 531; *McLellan* v. *Cumberland Bank*, 24 Maine, 566.

*J. Varney*, for the defendants.

VIRGIN, J.    When were the defendants obliged to accept a deed of the premises leased to them, or pay the liquidated damages stipulated for their refusal?

Their covenant answers: "At the expiration of said term, or so soon as the lessor shall acquire an absolute title to said premises and be able to convey the same,"— thus fixing upon one intended to be specific and certain, and another, different and uncertain, but both really contingent upon the redemption of the mortgage under which alone the lessor held.

When was the "expiration of the term?"

Shephard's ninth rule "to be universally observed for exposition of all kinds of deeds and of all parts thereof," requires, "that the construction be made upon the entire deed, and that one part of it doth help to expound another, and that every word (if it may be) may take effect and none be rejected." Law Com. Assur. c. 3, § 2.    This rule variously expressed has been universally recognized.

Applying the rule and seeking for the intention of the parties exclusively within the language adopted by them in their deed, "*ex antecedentibus et consequentibus*," we find the recital that the lessor's title is that of mortgagee.    The term of the lease is therein expressly limited to the period of "three years from May 9, 1877, subject only to the legal right of redemption from said mortgage by any one having the right to redeem."    This modification evidently rendered the "term" potentially less, but not more than the number of years specified.    In harmony with this the next succeeding clause limits the time for paying rent to "so long as said term shall last, or until the premises shall be redeemed." And after providing for a purchase of the premises by the lessees, the parties add another limitation and modification of the time during which rent shall be paid, to wit, that "the rent above stated shall cease at time of purchase,"—both obviously predicated, in the minds of the parties, of a time not exceeding at

most three years mentioned as the term of the lease. Moreover, in perfect accord with the foregoing, the lessees covenant that they will "quit and deliver up the premises . . at the end of the term aforesaid, except in case of purchase aforesaid." A construction that would date the purchase mentioned in this clause after the "end of the term" would be absurd.

Thus far the minds of the parties were evidently fixed upon three years as the extreme limit of their relation of landlord and tenant. And in our opinion the phrase "or so soon as the said lessor shall acquire an absolute title to said premises and be able to convey the same," read in the light of the other clauses already mentioned, do not extend the time, and that this was the sense in which those terms were understood by the parties when they adopted them to express their intention.

The subsequent provision that "all taxes upon the premises to be paid by lessor until lessees shall purchase as they above agree," does not conflict with this view, and neither does the covenant of the lessor "that so soon as she shall acquire title to the premises and be able to convey the same, she will sell, etc. to the lessees" for the sum named. They both have reference to the three years.

If this be not the proper construction, then the phrase "at the expiration of said term" would be without meaning for the clause "so soon as the lessor shall acquire an absolute title and be able to convey the same," would cover all the time both before, at, and after the expiration of the term.

Moreover looking outside of the instrument at the subject matter, the actual state of the title and the situation of the parties as the rules of construction authorize us to do, (*Robinson* v. *Fiske*, 25 Maine, 401 ; *Littlefield* v. *Winslow*, 19 Maine, 394 ; *Richardson* v. *Palmer*, 38 N. H. 212,) and we find not only nothing inconsistent with this construction but some things significantly pointing in the same direction. The mortgagee was in possession. More than two months prior to the date of the lease she had recovered a conditional judgment and could take possession by due diligence under her writ of possession in season to "acquire an absolute title at the expiration of said term;" or she could

have foreclosed under the third mode prescribed in R. S., c. 90, § 3, and brought about the same result. These circumstances, together with the fact that, at the execution of the lease, the parties had in mind a prospect of the plaintiff's acquiring absolute title by purchase of the outstanding interests before the expiration of the foreclosure satisfy us of their real intention as they expressed it in the lease, especially when we consider that they made no provision in it for an extension of it under any circumstances.

*Plaintiff nonsuit.*

APPLETON, C. J., BARROWS, PETERS, LIBBEY and SYMONDS, JJ., concurred.